# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLARITY SOFTWARE, LLC, | Case No. _____ |
| Plaintiff, | Related to Case No. 2:12-cv-01609-MRH |
| vs. | |
| FINANCIAL INDEPENDENCE GROUP, LLC, | JURY TRIAL DEMANDED |
| Defendant. | **ELECTRONICALLY FILED** |

## COMPLAINT

AND NOW, comes the Plaintiff, Clarity Software, LLC ("Clarity"), by and through its counsel, Obermayer Rebmann Maxwell & Hippel LLP, and hereby files this Complaint against Defendant Financial Independence Group, LLC ("FIG") and states as follows:

## PARTIES

1.  Plaintiff is a Pennsylvania limited liability company having its principal place of business at 600 Beaver Street, Suite 201, Sewickley, PA, 15143, in Allegheny County, Pennsylvania.

2.  Defendant Financial Independence Group, LLC, is a North Carolina Limited Liability Company with its principal place of business located at 19520 W. Catawba Avenue, Suite 200, Cornelius North Carolina.

## INTRODUCTION AND SUMMARY OF CLAIMS

This is an action for copyright infringement in which Clarity seeks damages and injunctive relief to redress and preserve its intellectual property rights, consisting of retirement planning software, which has been misappropriated and wrongfully disseminated by Defendant. Clarity is

the owner of copyrighted PenD'Calc R&EP Software, including, but not limited to, the Inherited Illustration Software Program, the Inherited IRA Program, and the Inherited Annuity Program (collectively, the "Software"). It has come to Clarity's attention that Defendant has, without the consent or knowledge of Clarity, disseminated unlawfully developed derivative versions of the Software, including its marketing presentation output, in an egregious manner and has made it available to virtually anyone who has access to the internet.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is predicated on 28 U.S.C. §§ 1331, 1332 and 1338, as there are federal questions raised herein, the parties are of diverse citizenship, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

5. Clarity and its predecessors have been engaged over the course of many years in developing, designing, and selling proprietary, copyrighted, marketing presentation software and materials to be used by financial service professionals in making marketing presentations relating to the analysis and computation of personal retirement assets. These marketing presentations are used by the financial services professionals as a planning tool and to sell various financial products to their clients.

6. Clarity's customers include financial advisors, insurance brokers, accountants, attorneys, banks, insurance companies, and brokerage firms in the United States. Professionals purchase and utilize Clarity's software to make marketing presentations to prospective and existing clients who are seeking financial planning advice.

7. Clarity's software marketing presentation is one of the most effective, visually concise and compelling financial marketing tools of its kind in the financial services industry.

8. The software systems designed, sold and supported by Clarity include proprietary, copyrighted Retirement Distribution and Estate Planning Software (collectively referred to as "R&EP Software") which consists of original creative works of drawings, graphs and written narrative, which utilize a particular individual's financial information and display specific computations and projections concerning the value of that person's retirement assets.

9. Financial services professionals use Clarity's Software as a marketing tool to sell financial products, consisting principally of annuities, to clients, as well as an illustrative tool to assist their existing clients in establishing retirement distribution plans.

10. On information and belief, FIG impermissibly copied salient aspects of Clarity's original Software presentation output consisting of narrative content, illustrations, charts and diagrams. A comparison of Clarity's Inherited IRA Software and FIG's unauthorized software output reveals that FIG or its agents copied and misappropriated Clarity's copyright protected presentation material. (See FIG's infringing output, Exhibit A, and Clarity's output, Exhibit B).

11. FIG's software output is so similar to that of Clarity's Software output that one of Clarity's customers mistook FIG's output as Clarity's output.

12. FIG used, misappropriated, and wrongfully distributed Clarity's Software output and made the output available, free of charge, to any member of the public who wished to use it on its website: http://portal.figmarketing.com/data/tools/InheritedIRA/.

13. The date on which FIG made its unauthorized version of Clarity's Software output available on the internet free of charge, and the number of persons who accessed the infringing output is currently unknown.

14. Clarity's customers pay substantial value for use of its Software output. The availability of an unauthorized derivative version of Clarity's presentation output in the marketplace free of charge greatly undermines Clarity's ability to generate revenue from its Software output.

15. The uncontrolled and unrestricted access to the unauthorized derivative version of the software output has caused irreparable harm to Clarity, the full extent of which cannot be readily determined at this time.

16. Clarity's counsel notified FIG on October 25, 2012 that it had infringed upon Clarity's proprietary presentation materials, and, without the consent or knowledge of Clarity, wrongfully misappropriated Clarity's proprietary materials in an egregious and illegal manner, and is disseminating Clarity's proprietary materials to the public in an unauthorized, unrestricted and unlimited manner.

17. Subsequently, FIG removed the derivative software output from its website.

18. FIG advertised and constantly marketed its annuity and stretch IRA calculators as a benefit of being a FIG agent, in its efforts to recruit new agents. (See Exhibit C).

### FACTS RELATING TO CLARITY'S CORPORATE STATUS AND CHAIN OF OWNERSHIP OF COPYRIGHT

19. Heck began developing the 32-bit copyrighted Software at issue in this litigation in 1996.

20. At that time, Heck personally retained ownership of the intellectual property for the Software while licensing it to PenD'Calc Corporation for distribution.

21.     Heck's friend and C.P.A., Eric Wallace, made a loan to PenD'Calc Corporation in 1995, which was secured by the Corporation's and Heck's intellectual property assets, including the software at issue in this action. (Exhibit D, Wallace Aff'd ¶ 3).

22.     In 2003, PenD'Calc defaulted on the loan, and it was agreed that Wallace would assume ownership of the intellectual property and PenD'Calc's assets in full satisfaction of the loan. (Exhibit D Wallace Aff'd ¶ 4).

23.     Wallace founded Clarity Software, LLC for the purpose taking ownership of and marketing the Software. All assets of PenD'Calc Corporation (including PenD'Calc's internet domain names) and the copyrighted software owned by Heck were transferred to Clarity under a written Satisfaction, Settlement, and Release Agreement on August 29, 2003. (Exhibit D, Wallace Aff'd ¶ 5).

24.     Beginning at Clarity's inception, Heck was employed General Manager of Clarity and was paid a salary by the company.

25.     At the time Clarity was formed, Wallace directed an attorney to register Clarity as an LLC. (Exhibit D, Wallace Aff'd ¶ 6).

26.     At all times after that, Wallace operated Clarity under the assumption that the attorney had properly registered Clarity as an LLC. (Exhibit D, Wallace Aff'd ¶ 6).

27.     Heck was aware that Wallace had registered Clarity but was not privy to any details regarding the registration. (Exhibit D, Wallace Aff'd ¶ 7).Until Clarity's existence was called into question in this litigation, Heck reasonably believed that Wallace had properly registered Clarity as an LLC with the Pennsylvania Department of State.

28. Clarity also registered a copyright for its R&EP Software (including the Software output that is the subject of this litigation) with the United States Copyright Office on September 21, 2004 at registration number TX0006036347. (See Exhibit E).

29. The Copyright registration lists Heck as the author of the software.

30. Pursuant to an agreement between Wallace and Heck, Wallace sold the entirety of his interest in Clarity (including the intellectual property at issue in this litigation) to Heck at the end of 2008, making Heck Clarity's sole Member. (Exhibit D, Wallace Aff'd ¶ 8).

31. From the beginning of Clarity's formation, Clarity has a federal tax ID number (22-3867336), under which it paid federal and Pennsylvania taxes and at various times, and paid its employees. Clarity filed tax returns from its inception in 2003 until 2008. After that point, Heck was sole Member and included Clarity's income on his personal tax returns. Clarity also established corporate bank accounts.

32. Clarity withheld federal and Pennsylvania income taxes on behalf of its employees and paid all applicable payroll taxes and unemployment compensation contributions, always identifying itself on its state and federal filings as "Clarity Software, LLC."

33. When Clarity's corporate existence was called into question during this litigation, Heck re-registered Clarity with the Pennsylvania Department of State in order to eliminate any ambiguity in Clarity's status. This registration was completed on March 7, 2013, and the Department of State assigned registration number 4171439.

34. Heck also executed an operating agreement for Clarity Software, LLC on April 17, 2013.

35. It is Clarity's position that prior to its most recent corporate registration, it was at least operating as a *de-facto* LLC and was thus entitled to own and register the Copyright for the

Software. Clarity's recent registration would thus have the legal effect of converting *de-facto* Clarity into a *de-jure* LLC, assuming all of *de-facto* Clarity's rights, property, and obligations.

36. In case Clarity's prior capacity to own property is not recognized (causing ownership of the Software to revert to Heck), Heck and Clarity executed a Transfer Agreement, transferring Heck's intellectual property (including the Software) to Clarity to the extent that it has not already been transferred to Clarity. Thus, Clarity Software, LLC (as registered with the Pennsylvania Department of State) is the owner of the copyrighted Software and the proper Plaintiff in this litigation.

## COUNT I
## COPYRIGHT INFRINGEMENT

37. Clarity hereby repeats and incorporates by reference all preceding paragraphs of this Complaint as if fully restated herein.

38. Clarity's Software output is registered with the U.S. Copyright Office and copyright protected pursuant to the Copyright Act of 1976 ("the Copyright Act"), which was amended in 1980 (17 U.S.C. §§ 101 et seq.) expressly to extend copyright protection to computer programs and derivatives which are entitled to copyright protection as "literary works." *See e.g., Whelan Assoc. v. Jaslow Dental Lab.*, 797 F. 2d 1222, 1235 (3d Cir. 1986).

39. The presentation output generated by the Software sets forth, and contains on the bottom center of each page, the copyright notice, "Copyright Clarity Software, LLC."

40. The R&EP Software presentation output possesses a substantial degree of creativity, is original to, and independently created by Clarity, and is protected by a valid copyright.

41. Clarity has complied in all respects with the provisions of the Copyright Act.

42.     FIG has knowingly infringed upon the aforesaid Clarity R&EP Software output copyrights by its malicious, fraudulent, deliberate and/or willful acts including, but not limited to, the following:

   a. copying and reproducing the Clarity's Software presentation output;

   b. distributing a derivative version of Clarity's R&EP Software output which produces output that copies the Clarity output for unrestricted dissemination to the public without the knowledge of Clarity; and

   c. using and displaying the derivative version of Clarity's Software output on FIG's website, and thereby allowing anyone with access to the internet the ability to use unauthorized, infringing copies of Clarity's presentation output free of charge.

43.     The above-described irresponsible, malicious, fraudulent, deliberate and/or willful conduct of FIG has caused and continues to cause Clarity to suffer irreparable harm, the full extent of which cannot be readily determined at this time.

44.     Unless and until FIG is enjoined from any and all further use, distribution, marketing, and display of the derivative software output, Clarity is and will continue to be irreparably harmed.

45.     Clarity has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully demands the following equitable and legal relief on behalf of Plaintiff Clarity Software LLC and against FIG:

   a. That FIG, its agents, and servants, be enjoined from infringing upon Clarity's R&EP Software in any manner, including the distribution, reproduction, marketing and use of the derivative software output, including without limitation, that which relates to or concerns the availability of derivative software output on Defendant FIG's website (17 U.S.C. § 502);

   b. That FIG, its agents, and servants, be required to destroy any and all infringing copies of derivative software output in its possession and/or control (17 U.S.C. § 503);

   c. That damages be awarded against FIG for the actual damages suffered by Clarity as a result of the infringement, and for disgorgement of profits derived by FIG as

a result of the infringement of R&EP Software output or, at Clarity's election, an award of statutory damages for the infringement of each copyrighted work of Clarity (17 U.S.C. § 504);

d. That FIG, its agents, and servants, be required to supply for examination a complete, functional copy of the derivative software and any marketing materials developed by FIG that include images derived from the R&EP Software or derivative software;

e. That FIG, its agents, and servants, be held jointly and severally liable for Clarity's attorneys' fees and costs (17 U.S.C. § 505); and

f. That any and all such further relief as this Court deems appropriate be granted, including injunctive, equitable and/or legal relief.

JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

Date:  June 10, 2013

*s/Bruce C. Fox*
Bruce C. Fox, Esquire
Pa. ID. No. 42576
*bruce.fox@obermayer.com*
Andrew J. Horowitz, Esquire
Pa. ID. No. 311949
*andrew.horowitz@obermayer.com*
One Mellon Center, Suite 5240
500 Grant Street
Pittsburgh, PA 15219
(412) 566-1500
Fax (412) 566-1508

Counsel for Plaintiff Clarity Software, LLC

## VERIFICATION

I, Vincent B. Heck, verify that I have personal knowledge of the statements of fact contained in the above *Complaint*. Furthermore, I certify that the averments are accurate and true and are made subject to the penalties of 28 U.S.C.A. § 1746 relating to unsworn declarations under the penalty of perjury.

Dated: 6-10-13

Vincent B. Heck