IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLARITY SOFTWARE, LLC, | )<br>) |
| Plaintiff, | ) 2:13-cv-00795<br>) |
| v. | ) Consolidated With 2:12-cv-1609<br>) |
| FINANCIAL INDEPENDENCE GROUP, LLC, | ) Judge Mark R. Hornak<br>)<br>) |
| Defendant. | )<br>) |

## OPINION

**Mark R. Hornak, United States District Judge**

Presently pending before the Court is a motion by Defendant Financial Independent Group, LLC ("FIG") for recovery of costs and attorney fees (ECF No. 47) following entry of summary judgment in its favor and against Plaintiff, Clarity Software, LLC ("Clarity"). For the reasons that follow, the Court will deny Defendant's motion for attorney's fees and will grant its request for recovery of costs in part and will deny it in part.

### I.   INTRODUCTION

This case concerns a dispute over the ownership and alleged infringement of certain copyrighted software developed by Vincent Heck and known as the "PenD'Calc R & EP Software" (hereafter, the "Software"). In 1995, Heck's friend and C.P.A., Eric Wallace, made a loan to Heck's business (known as "PenD'Calc Corporation"), which was partially secured by certain of Heck's personal assets, including the copyright for the Software. When PenD'Calc later defaulted on the loan, Heck and Wallace agreed that Wallace would take ownership of Heck's intellectual property rights and, to that end, Wallace founded a new business under the

name "Clarity Software, LLC" for the stated purpose of taking ownership of, and marketing, the Software.

On August 29, 2003, PenD'Calc, Clarity, Heck, and Wallace entered into an agreement (the "2003 Agreement") pursuant to which all of PenD'Calc's assets and all of Heck's rights to the Software were purportedly transferred to Clarity and the 1995 Loan was discharged. As of that same date, PenD'Calc was dissolved and Heck became the general manager of Clarity.

Thereafter, Clarity held itself out as a duly organized LLC operating under the business name "Clarity Software, LLC." Among other things, Clarity maintained a checking account under the name "Clarity Software, LLC" and was identified in the same manner on state and federal tax filings. On September 21, 2004, the copyright for the Software was registered with the U.S. Copyright Office, with "Clarity Software, LLC" being listed as the claimant.

Meanwhile, on December 31, 2003, Heck had filed a voluntary petition for personal bankruptcy under Chapter 13 of the bankruptcy code. The bankruptcy schedules did not list or otherwise disclose the existence of either the 2003 Agreement or the transaction which ostensibly occurred pursuant to that agreement. The case was subsequently converted to a Chapter 7 case, and a discharge was granted on November 12, 2004. The following year, the Chapter 7 trustee reported that there were no assets to administer for the benefit of creditors. The case was closed in 2006.

On November 5, 2012 Clarity filed a federal lawsuit against FIG based on FIG's alleged misappropriation and wrongful dissemination of the Software.[1] *See Clarity Software, LLC v. Financial Independence Group, LLC, et al.*, Case No. 2:12–cv–1609–MRH (W.D. Pa.) (hereafter, the "2012 Lawsuit"). The operative First Amended Complaint in that case asserted a

---

[1] Another named defendant, Lucas Partners, Inc. d/b/a/ Carolina Computer Partners, ultimately settled with Clarity and was dismissed from the litigation.

single count of copyright infringement against FIG under the Copyright Act of 1976, *as amended*, 17 U.S.C. §§ 101 *et seq. See id.* at ECF No. 31. In the course of the 2012 Lawsuit, FIG filed a motion to dismiss the copyright infringement claim on the grounds that "Clarity Software, LLC," the sole named plaintiff in that action, did not exist as a legal entity and therefore lacked both the capacity to sue and the capacity to own a copyright, *see id.* at ECF No. 44. Clarity attempted to address any potential jurisdictional deficiency in this regard by formally registering (or, as it argued, re-registering) "Clarity Software, LLC" with the Pennsylvania Department of State on March 7, 2013. Clarity also argued that, to the extent Heck (rather than Clarity) was the real party in interest in the 2012 Lawsuit, Heck could be substituted into the litigation or could ratify it under Rule 17(a)(3) of the Federal Rules of Civil Procedure.

Based on the record before it, this Court entered a memorandum order concluding that there was insufficient evidence to establish that "Clarity Software, LLC" was the properly named plaintiff in the 2012 Lawsuit or that the case could proceed as it was then styled. *See Clarity Software, LLC v. Financial Independence Group, LLC, et al.*, Case No. 2:12–cv–1609–MRH (W.D. Pa.) (Mem. Order dated May 7, 2013, ECF No. 61). In its ruling, the Court observed that even if Clarity Software LLC was not a legitimate LLC, it may have existed as a partnership, a *de facto* corporation, or some other type of business entity which may or may not have had the capacity to hold a copyright. *Id.* at 5. The Court found that Clarity had made a "colorable claim" that the software allegedly infringed was owned (a) by Vincent Heck or (b) by a Clarity entity to which Heck is closely related. *Id.* at 7. Nevertheless, the Court observed that, "while the list of potential copyright claimants here is small, it still remains stubbornly in the plural." *Id.* Accordingly, the Court denied FIG's motion to dismiss the 2012 Lawsuit without prejudice

and stayed the case pending an opportunity for Clarity to cure any jurisdictional deficiencies by way of an amended pleading.

With subsequent leave of court, Clarity commenced the present civil action in its capacity as a duly organized limited liability company using the name "Clarity Software, LLC."[2] In this litigation, as before, Clarity asserted a single claim against FIG for alleged infringement of the copyrighted Software.

In its Complaint, Clarity proffered two theories regarding its ownership of the subject copyright. First, Clarity asserted that it existed as a *de facto* limited liability company prior to March 7, 2013 and, in that capacity, took ownership of the copyright via the 2003 Agreement. Alternatively, Clarity asserted that Heck had retained ownership of the copyright from August 29, 2003 until 2013, at which point he executed an agreement transferring any residual intellectual property rights in the Software to Clarity. Then, during the course of this litigation, Clarity asserted a third theory of ownership – namely, that it had in fact been duly organized as a *bona fide de jure* limited liability company and had taken ownership of the copyright in that capacity pursuant to the 2003 Agreement.

On November 15, 2013, FIG filed a motion for summary judgment on the basis that Clarity, as a matter of law, could not establish its ownership of the copyright under any of its proffered theories. FIG argued that "Clarity Software LLC" was not validly organized as a Pennsylvania limited liability company until March 7, 2013 and, consequently, Clarity never acquired valid ownership of the copyright because the chain of title was broken in 2003 when Heck filed for bankruptcy.

---

[2] The Court subsequently consolidated both the 2012 Lawsuit and the instant civil proceedings under the 2013 case number.

4

On September 30, 2014, this Court granted FIG's motion for summary judgment. (*See* Mem. Op. and Order dated Sept. 30, 2014, ECF Nos. 44 and 45, reported at 51 F. Supp. 3d 577 (W.D. Pa. 2014)). After reviewing the summary judgment record, the Court concluded that the evidence could not support a reasonable inference of Clarity's existence as either a *de jure* LLC or a *de facto* LLC (assuming Pennsylvania even recognizes *de facto* LLCs) as of the date of the 2003 Agreement. (*See id.* at 14-18, 20-24.) Consequently, the Court found that Clarity could not have obtained valid title to the copyright via the 2003 Agreement. (*Id.*) Moreover, the Court found that Clarity could not have obtained ownership of the copyright from Heck personally via the 2013 transfer agreement because Heck's rights in the Software became property of his bankruptcy estate after he filed for bankruptcy protection in December of 2003. (*Id.* at 25-27.) The Court noted that Heck had not included his ownership interest in the copyright in his bankruptcy schedules; as a result, Heck's intellectual property rights were never administered and/or abandoned by the trustee and, consequently, they remained property of the bankruptcy estate. (*Id.*) Based on the foregoing, the Court concluded that the bankruptcy trustee was the real party in interest insofar as the subject copyright is concerned and, therefore, both Clarity and Heck lacked standing to pursue the copyright infringement claim. (*Id.* at 27.)

Following the summary judgment proceedings, FIG filed the pending motion for attorney fees and costs and supporting materials (ECF Nos. 47, 48, 48-1). Clarity filed its brief in opposition on November 3, 2014 (ECF No. 53). Thereafter, FIG and Clarity filed their respective reply (ECF No. 57) and sur-reply (ECF No. 61). The Court then held oral argument on this matter. In light of the foregoing, the issues are adequately joined and the motion is ripe for disposition.

## II. DISCUSSION

Section 505 of the Copyright Act provides that:

[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. §505. Consequently, "to recover attorneys' fees under the Copyright Act, parties must be considered 'prevailing,' *i.e.,* 'succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Am. Bd. of Internal Med. v. Von Muller,* 540 F. App'x 103, 106 (3d Cir. 2013) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Because fee awards are discretionary under the Act, even prevailing parties are not automatically entitled to recover their attorney's fees. *Id.* (*citing Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)). In exercising its discretion whether to award counsel fees, the Court must consider a number of non-exclusive factors, including: "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* at 106-07 (*quoting Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19 (1994)). *See also Lieb,* 788 F.2d at 156 (indicating that the foregoing factors are not exclusive). "While there is no requirement of bad faith in determining whether to award attorneys' fees and costs, a court must be evenhanded in exercising its discretion." *Lowe v. Loud Records,* 126 F. App'x 545, 547 (3d Cir. 2005) (citing *Lieb,* 788 F.2d at 155-56).[3]

---

[3] This Motion is premised on the application of Section 505 of the Copyright Act, 17 U.S.C. 505. It appears to the Court that the controlling precedent in the Circuit as to the standard for the award of such fees and costs is that set out in *Am. Bd. of Internal Med. v Von Muller*, 540 F. App'x. 103, 106 (3d Cir. 2013) and *Lieb v. Topstone Indus., Inc.*, 788 F. 2d 151, 156 (3d Cir. 1986).

Now, the United States Supreme Court has granted review to address the following question:

6

Here, FIG argues that Clarity adopted a pattern of objectively unreasonable positions, particularly with regard to its assertion that it owned the copyright. According to FIG, Clarity failed to conduct a proper pre-filing investigation regarding this issue and, on multiple occasions when it was confronted with a lack of evidence to support its assertion of copyright ownership, Clarity failed to change its position and instead "worked to obfuscate critical facts regarding its defective chain of title." (Mem. Supp. of Def.'s Mot. for Recovery of Costs and Attorney's Fees at 4, ECF No. 48.) FIG is particularly critical of Clarity's failure to abandon its infringement claim after February 2013, when FIG first raised the fact that there were no formation documents for "Clarity Software, LLC" on file at the Pennsylvania Department of State. FIG is also critical of Clarity's failure to disclose Heck's personal bankruptcy in 2003 – an event that interrupted the chain of title and resulted in the copyright becoming property of Heck's bankruptcy estate.

Clarity maintains that, at all times, it acted reasonably and in good faith in pursuing this litigation. With regards to the issue of copyright ownership, Clarity contends that it reasonably

---

What is the appropriate standard for awarding attorneys' fees to a prevailing party under Section 505 of the Copyright Act?

*Kirtsaeng v. John Wiley & Sons, Inc.*, No. 15-375, 2016 WL 205944 (U. S. Sup. Ct. Jan. 15, 2016), *cert. granted* at 136 S. Ct. 890 (Jan. 15, 2016).

The central argument of the Petition in *Kirtsaeng* that was granted by the Supreme Court is that the "courts of appeals are in utter disarray about the standard for considering fee requests under the Copyright Act." Petition at 9. While that is a bold and broad statement, it appears to this Court to not be a wholly unfounded one, based on the *Kirtsaeng* Petitioners' contention that the courts of appeal have applied four (4) different standards for the award of such fees. Petition at 11. The Petition also specifically cites to the decision of our Court of Appeals in *Lieb*. Petition at 15. Given the scope of the Question Presented in the Petition, and the unconditional grant of that Petition, it would thus appear that whether *Lieb* will continue to provide the Section 505 rule of decision in our Circuit (or may even be reaffirmed and applied nationally) is squarely before the Supreme Court for decision this Term. Further, as to the request for costs in this case, this Court would note that Section 505 addresses both attorneys' fees *and* costs, and therefore, the standards for the award of such relief may well be resolved in *Kirtsaeng*.

I conclude that I am obligated to apply our Circuit's law as it now exists, particularly where review by the Supreme Court would not necessarily uncut that precedent (and as noted, the Supreme Court may well say that the "Third Circuit" rule is the correct one). Second, given the range of dispositions of the Plaintiff's merits appeal, it could turn out that Defendants are no longer "prevailing" in whole or in part, making the fees and costs issue no longer relevant.

7

believed it could establish ownership based on: (a) the assurances of Wallace that Clarity had been duly organized as an LLC, (b) circumstantial indicia of Clarity's corporate existence, and (c) the fact that Clarity had successfully prosecuted other copyright infringement cases without any challenges being raised concerning its ownership of the subject copyright. Based on these factors, Clarity maintains that it had reasonable grounds to assert its existence as either a *de facto* or *de jure* limited liability company that took ownership of the copyright via the 2003 Agreement. Insofar as Heck's 2003 bankruptcy is concerned, Clarity asserts that its failure to disclose that event was an oversight resulting from the fact that: present counsel was not involved in the bankruptcy and had no knowledge of it; Heck is a layperson who did not appreciate the significance of his distant bankruptcy case to the present litigation; and/or Heck lacked any recollection of what was disclosed or not disclosed on his bankruptcy schedules.

Having reviewed all of the parties' submissions and after careful consideration of their respective arguments concerning the pending motion, the Court in its discretion will decline to award counsel fees. As noted, the Court must exercise its discretion based on factors such as the non-prevailing party's frivolousness, motivation, and/or objective unreasonableness and whether there is a need to advance considerations of compensation and deterrence. "Frivolousness" in this context is defined as "lacking any plausible merit." *Warren Pub. Co. v. Spurlock*, Civil Action No. 08-3399, 2010 WL 760311, at *4 (E.D. Pa. Mar. 3, 2010) (internal quotation marks and citation omitted). In this case, FIG has not made an assertion of frivolousness and, instead, grounds its motion exclusively on assertions of Clarity's objective unreasonableness.

"[O]bjective unreasonableness encompasses both a legal and a factual component." *4C, Inc. v. Pouls*, Civ. A. No. 11-778, 2012 WL 2343042, at *3 (D. Del. June 19, 2012) (citation and internal quotation marks omitted). The fact that summary judgment was granted against a

8

plaintiff does not necessarily render the plaintiff's claims unreasonable *per se*. *See Cottril v. Spears*, No. CIV. A. 02-3646, 2003 WL 21545105, at *2 (E.D. Pa. July 2, 2003) ("[C]laims are not considered per se objectively unreasonable where summary judgment was granted.")(citing authority).

Here, as noted, Clarity presented a number of theories to support its claim of copyright ownership. Originally, Clarity prosecuted the 2012 Lawsuit based on the implicit, albeit mistaken, assumption that it had been duly organized as a Pennsylvania LLC and owned the subject copyright in that capacity. *See Clarity Software, LLC v. Financial Independence Group, LLC, et al.*, Case No. 2:12–cv–1609–MRH (W.D. Pa.) (Complaint, ECF No. 1 and First Amended Complaint, ECF No. 31). After it came to light that the Pennsylvania Department of State had no record of Clarity's existence as a Pennsylvania limited liability company, Clarity took the position that any defect in its LLC status merely meant that the real party in interest was Heck, doing business as an unincorporated sole proprietorship, and the case could therefore proceed based on Heck's substitution as the appropriate plaintiff or his ratification of the litigation. By the time that Clarity commenced this second civil action, it had been formally organized as a Pennsylvania limited liability company. Clarity then took the position that it acquired ownership of the copyright either as: (a) a *de facto* LLC via the 2003 Agreement, (b) a *de jure* LLC via the 2003 Agreement, or (c) from Heck personally via the 2013 transfer agreement.

Insofar as the *de facto* and *de jure* LLC theories are concerned, the Court finds that Clarity's position, although lacking in merit, was not objectively unreasonable either in law or in fact. The "*de facto*" issue was first broached by this Court in connection with the 2012 Lawsuit when it suggested that "*de facto*" status might be a relevant legal concept. *De facto* corporate

9

status has long been recognized in Pennsylvania under certain limited circumstances. (See Mem. Op. dated Sept. 30, 2014 at pp. 19-24, ECF No. 44.) Although Clarity's "*de facto* LLC" argument involved a somewhat novel theory and would be based on an extension of existing legal principles, the Court does not consider Clarity's argument in this regard to be objectively unreasonable from a legal standpoint.

From an evidentiary standpoint, the Court found that Clarity was unable to produce sufficient evidence from which a reasonable jury could conclude that Clarity had taken ownership of the subject copyright via the 2003 Agreement as either a *de jure* Pennsylvania limited liability company or a *de facto* limited liability company. Notwithstanding this failure of proof at the summary judgment stage, the Court concludes that Clarity's position was not factually unreasonable. As Clarity notes, Heck was not personally involved in the formation of Clarity; rather, he relied on Eric Wallace to organize Clarity as a Pennsylvania limited liability company. Once the issue of Clarity's legal existence became an issue, Heck consulted Wallace, an experienced CPA, who assured Heck in no uncertain terms that Clarity was a duly organized LLC. Under subpoena, Wallace produced some documentation evidencing Clarity's operations as a business entity but, due in part to the passage of time, Wallace's relocation, and Wallace's decision to discard certain business files, the documentation was incomplete and sketchy at best. Meanwhile, Clarity had apparently conducted business for years under the mistaken belief that it was a duly organized Pennsylvania limited liability company, and it had even prosecuted other copyright infringement actions without any challenges being raised concerning its existence or rights to the copyrighted Software. In addition, the record revealed that the Pennsylvania Department of Revenue believed that the LLC had some valid status, and that state and federal taxes were paid by it. Based on his mistaken assumption that Wallace was organizing Clarity as

a limited liability company, Heck colorably transferred his interest in the copyrighted Software to Clarity pursuant to the 2003 Agreement.

Ultimately, Plaintiffs were able to produce some evidence from which, they claimed, "Clarity Software, LLC's" legal existence could be inferred, but the Court found that this evidence, when viewed in light of the record as a whole, would not support the existence of a genuine dispute concerning Clarity's legal existence as of 2003 or its ownership of the subject copyright. Nevertheless, the Court's summary judgment ruling in favor of FIG does not necessarily mean that Clarity was objectively unreasonable in pursuing its claim. *See Cottril,* 2003 WL 21545105, at *2. Based on the factors enumerated, the Court concludes that Clarity acted reasonably in arguing that it took ownership of the copyright through the 2003 Agreement in its capacity as either a *de jure* or *de facto* LLC.

It is a closer question whether Clarity was objectively reasonable in making the alternative argument that Heck personally transferred ownership of the copyright in 2013. Both parties recognized the fact that, if "Clarity Software, LLC" did not legally exist in 2003, then ownership of the copyright remained with Heck as of that time. However, once it became clear that Heck had filed for bankruptcy in December 2003 and that he had failed to include his interests in the copyright on his bankruptcy schedules, Clarity's alternative theory of ownership was effectively foreclosed because any rights to the copyright remained property of Heck's bankruptcy estate. In this Court's estimation, Clarity's arguments to the contrary at worst became arguably unreasonable once the pretrial record had been more fully explored and the parties developed that issue. Further, the bankruptcy issue was essentially collateral to the focus of this litigation on the *de jure/de facto* existence of the LLC. Defendant does not challenge in any meaningful way the assertions of Plaintiff's counsel that they were not involved in that

bankruptcy, nor has the Defendant demonstrated that Heck himself was sufficiently aware of the nuances of bankruptcy law and his own bankruptcy proceeding that he, personally, should be charged with having "sandbagged" the Defendant.

The Court also must consider factors such as the non-prevailing party's motive in pursuing the litigation and whether there is a need to award fees as a deterrent. "'[P]arties are improperly motivated only if they do not have a good faith intent to protect a valid interest, but rather a desire to discourage and financially damage a competitor by forcing it into costly litigation." *Warren v. Spurlock, supra*, 2010 WL 760311, at *12 (citation omitted) (alteration in the original). Here, the record suggests that Clarity's motive for doggedly pursuing its claim was borne of economic necessity rather than a bad faith desire to harm or intimidate a competitor. The copyright at issue in this case concerns software that Heck (the sole member of Clarity) personally created and that has served as his primary, if not sole, source of income over the course of his career. Once the issue of copyright ownership was raised, the litigation undoubtedly took on greater economic proportions from Clarity's point of view, since Clarity's ability to prosecute future infringement actions also hung in the balance. Clarity's financial motives were likely further amplified by the fact that Heck has experienced significant health concerns which contributed to his past financial difficulties and will likely continue to present a substantial economic burden for him and his family. Finally, Clarity had at least a colorable basis for believing that infringement occurred given the apparent similarities between the Software at issue and the product being offered by FIG. Therefore, based on the record at hand, the Court cannot conclude that Clarity was motivated by other than a good faith intent to protect what it perceived as a valid intellectual property interest rather than simply a desire to discourage and financially damage a competitor. Realistically, given the parties' disparate economic

positions, it is also unlikely that Clarity could have in actuality discouraged FIG, even if it wanted to, by litigating its putative rights to the subject copyright in this litigation. In light of these considerations, the Court finds that Clarity's motive is not a factor that counsels in favor of an attorney fee award.

Finally, the Court perceives no special circumstances in this case that warrant an award of attorney's fees in order to advance considerations of compensation or deterrence. With regard to compensation, the Court notes that FIG's defense has been largely funded by its insurance carrier. With regard to deterrence, the Court notes that the outcome of this litigation presently leaves Clarity without the means to conduct future copyright infringement actions unless it first takes steps to remedy the defects in its chain of title. These measures in and of themselves may prove costly to Clarity and, as a result, neither FIG nor other prospective competitors of Clarity are in immediate danger of being sued by Clarity for alleged copyright infringement relative to the Software that is the subject of this litigation. Finally, to the extent that considerations of deterrence are relevant, the Court is satisfied that an actual current and potential future award of certain litigation costs in favor of FIG would deter Clarity from pursuing objectively unreasonable litigation in the future.[4]

The Defendant, having prevailed in the grant of summary judgment, also seeks an award of litigation costs under Section 505. The standard for the award of costs under that provision has not been addressed as such by our Court of Appeals, and the parties have not briefed it as such. The issue from where the Court sits is whether the limitations on the recovery of litigation costs contained in 28 U.S.C. §1920 as applied to the benefit of a prevailing party via Fed. R. Civ. P.

---

[4] The Court notes that FIG has sought to recover over $45,000 in what it acknowledges are otherwise nontaxable litigation costs. (ECF No. 48-3 at 79-84.)

13

54(d) are also applicable to the consideration of the award of costs under Section 505, or whether some other rule applies.

District courts in our Circuit affirmatively addressing the issue have applied the Section 1920 categorical limitations to Section 505 costs requests. *Ackourey v. Sonellas Custom Tailors*, No. 12-6729, 2014 WL 1327587, at *2 n.4 (E.D. Pa. Apr. 3, 2014); *Healthcare Advocates, Inc. v. Harding*, No. 05-3524, 2007 WL 2684016, at *1 (E.D. Pa. Sept. 10, 2007); *Schiffer Pub., Ltd. V. Chronicle Books, LLC*, No. 03-4962, 2005 WL 1244923, at *15 (E.D. Pa. May 24, 2005). Those courts concluded that the reference in Section 505 to "full costs" means, and is limited to, the costs allowed under Section 1920.

There is a lot of disagreement on this point. *See generally*, *20th Century Fox Film Corp. v. Entertainment Dist.*, 429 F. 3d 869, 884-85 (9th Cir. 2005) (surveying the wide array of conflicting cases from the Courts of Appeals and permitting recovery of non-Section 1920 costs). The tension is between those decisions that conclude that the reference to "all costs" in Section 505 is intended to mean "all costs that are recoverable under Section 1920," and those that conclude that Section 505 is intended to sweep more broadly than Section 1920. *See InvesSys, Inc. v. McGraw-Hill Companies, Ltd.*, 369 F. 3d 16, 22-23 (1st Cir. 2004) (broad view); *Adsani v. Miller*, 139 F. 3d 67, 75 (2d Cir. 1998) (broad view); *Coles v. Wonder*, 283 F. 3d 798, 803 (6th Cir. 2002) (affirming award of non-Section 1920 costs); *Susan Wakeen Doll Co. v. Ashton Drake Galleries*, 272 F. 3d 441, 457-58 (7th Cir. 2001) (dicta) (Section 505 displaces Section 1920 in copyright cases); *Pinkham v. Camex*, 84 F. 3d 292, 295 (8th Cir. 1996) (costs limited to Section 1920 costs); *Artisan Contractors, Ass'n of Am., Inc. v. Frontier Ins. Co.*, 275 F. 3d 1038, 1040 (11th Cir. 2001) (Section 505 awards limited to categories authorized by Section 1920); *Guzman*

*v. Hacienda Records and Recording Studio, Inc.*, No. 12-42, 2015 WL 4920058, at *2 (S.D. Tex. Aug. 18, 2015) (Section 505 allows for non-Section 1920 costs).

The Court concludes that Section 505 authorizes the award of a broader sweep of costs to a prevailing party than does Section 1920, finding the reasoning of the *Guzman* court to be persuasive.[5] In that case, the court concluded that the provisions of Section 505 of the Copyright Act do not contain the categorical limitations set forth in Section 1920, and that reality, when coupled with Section 505's command that "full costs" be awarded, leads to the result that Section 505 was intended by Congress to cover the award of full costs of litigation (subject to the substantive rules otherwise applicable to Section 505) without the categorical limitations contained in Section 1920, that doing so is consistent with giving full effect to the Copyright Act as it was passed into law by Congress, and also prevents the reference to costs in Section 505 being reduced to surplusage[6].

The question then becomes what costs of the Defendant are nonetheless to be awarded. The Court concludes that a consideration of the *Lieb* factors interpreting when and how attorneys' fees are to be awarded in a copyright case, coupled with the conclusion reached by the court in *Murphy v. Lazarev*, No. 10-0530, 2015 WL 1868496, at *12 (M. D. Tenn. Apr. 23, 2015), leads to the right result, which is to allow costs that were *necessary* to the Defendant's defense of the case. In applying that standard, the Court believes that it is appropriate to consider the nature and timing of the costs incurred, the degree to which they reflect costs ordinarily paid by the client rather than incurred by the lawyers as part of the costs of their doing business, the

---

[5] *Guzman's* reasoning has not been met with universal acclaim. *See Geophysical Svcs., Inc. v. TGS-Nopec Geophysical Svcs.*, No. 14-1368, 2016 WL 30294 (S.D. Tx. Jan. 4, 2016); *Tempest Pub., Inc. v. Hacienda Records and Recording Studio, Inc.*, No. H-12-736, 2015 WL 6394414 (S.D. Tx, Oct. 21, 2015).

[6] This would appear to be the express statutory authority for the award of costs outside of §1920 referenced in *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 674 F. 3d 158, 164 (3d Cir. 2012).

15

necessity of incurring the costs at all and for their being incurred when they were, and the relationship of those costs to the issues presented to the Court for decision. In any event, such costs must be reasonable, and reasonably and properly related to the case.

Viewed through that lens, on the record now presented, the Court concludes that the Defendant is entitled on this record to a partial award of the costs as submitted, as follows.

The Court finds and concludes that the costs submitted in the categories of "court reporting" ($1,361.45), printing/copying ($261.03), deposition expenses ($96.25), and witness fees ($64.41) meet this test in full, and will be awarded. From the materials submitted in support of the award of costs, it appears that the Defendant's incurring such costs, when they did, was necessary for the litigation of the claims and defenses in the action.

The Court cannot say the same for the balance of the costs, as the materials submitted to the Court simply do not provide a basis for the Court to conclude that they were reasonable and necessary, or reasonably and necessarily incurred at the litigation juncture at which they were. For instance, the Defendant claims expenses of $19,077.36 for a "damages expert," but does not provide any back up for that claimed expense, nor any supporting argument as to why such expenses were reasonable for the work done, and why it was both reasonable and necessary to have that work done when it was done. This is of particular note in that the bases for the Defendant's summary judgment motion did not appear to the Court to hinge on a damages analysis.[7]

Along the same lines is a request for costs in the amounts of $13,405.54 for "ESI" and $2,077.52 for what appears to be alleged ESI-related "travel." To be sure, the Defendant, like other litigants, had certain obligations to identify and preserve "ESI" (electronically-stored information), but the Defendant's submissions do not lay out what work was done, and more

---

[7] And these costs may not be recoverable at all, even under the *Guzman* standard. *Guzman,* at *4.

importantly, why it was necessary to engage the third-party consultant that did it, and why it was necessary to have them engaged when they were. Further, the Defendant seeks costs for "research" in the amount of $8,796.12, which appears to be out-of-pocket costs to an electronic legal research provider (LEXIS). While in theory such costs may be appropriate under Section 505 in certain circumstances, applying the standards noted above, the Court declines to award them here.

The total amount of costs awarded under Section 505 is therefore $1,783.14.

### III. <u>CONCLUSION</u>

Based on the foregoing, the Court concludes that the totality of factors counsels against an award of counsel fees in this case. Defendant's motion for recovery of costs and attorney's fees will therefore be denied with respect to Defendant's request for counsel fees. The Court will, however, grant the motion in part as it relates to Defendant's request for recovery of certain costs as enumerated above, and denied in all other regards. An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: May 31, 2016

cc: All counsel of record